[No. 25158. Department Two. August 4, 1934.]

THE STATE OF WASHINGTON, *on the Relation of North-western National Insurance Company, Appellant,* v. WILLIAM A. SULLIVAN, *as State Insurance Commissioner, Respondent.*[1]

[1]Reported in 35 P. (2d) 24.

*Glenn J. Fairbrook,* for relator.

*The Attorney General* and *George Downer, Assistant,* for respondent.

TOLMAN, J.,—By this action, the plaintiff, or petitioner, seeks a review of the official action of the insurance commissioner in refusing to accept its proposed deviations from bureau rates and to prohibit the commissioner from cancelling its license to do business in this state because of such deviations. After a trial to the court on the merits, a judgment was entered denying any relief, and the petitioner has appealed.

In order to create a background and present the questions here involved in their proper light, it seems necessary to give something of an outline of our legislation on the subject.

By chapter 49, Laws of 1911, p. 161, known as the insurance code, the office of insurance commissioner was established, and certain regulatory power conferred upon that officer. Neither the original act nor any of the subsequent amendments thereto gave the commissioner any regulatory power over premium rates, and at no time has the legislature directly authorized any officer or body to fix or regulate insurance rates. The insurance code does authorize rating bureaus. Rem. Rev. Stat., § 7119. We quote from this section briefly:

"Any person or persons or copartnership, resident within this state, or a domestic corporation, may organize or maintain a rating bureau, for the purpose of inspecting and surveying the various municipalities and fire hazards in this state, and the means and facilities for preventing, confining, and extinguishing fires, for the purpose of estimating fair and equitable rates for insurance, . . . The services of such rating bureau shall be available, equally and ratably in proportion to the service rendered, to any and all insurance companies, agents, brokers, and property owners."

Only one rating bureau exists and operates in this state.

There is no statute requiring insurance companies to charge only bureau rates. The right to file a schedule of rates by each company doing business in this state has always been preserved.

Laws of 1911, p. 209, § 73, provided:

"Every fire insurance company before it shall receive a license to transact the business of making insurance as an insurer in this state, must file in the office of the insurance commissioner a copy of its rating schedules. Every such company and its agents shall observe said rating schedules and shall not deviate therefrom in making insurance until amended or corrected rating schedules shall have been filed in the office of the insurance commissioner. Any company which shall make fire insurance in this state according to the advisory rates, or a stated deviation therefrom, furnished by a rating bureau as provided in the following section, may receive a license to transact the business of making fire insurance in this state, without filing a rating schedule, by filing written notice in the office of the insurance commissioner of its adoption of such advisory rates, stating the deviation therefrom, if any, at which it will make insurance, which deviation, if any, shall be uniformly applied to all purchasers of insurance from such company in this state."

This section has several times been amended in certain particulars, but by the last amendment, chapter 153, Laws of 1933, p. 553, § 1 (Rem. 1933 Sup., § 7118), it was restored practically to the form in which it was enacted in 1911, so that it now requires deviations from bureau rates, if made, to be uniform in all classes.

After the 1933 amendment became effective, under the interpretation of the *Attorney General*, the insurance companies operating in this state were advised that each might file its own schedule of rates on certain classes of risks and adopt the bureau rates on

other classes, either with or without deviation therefrom, but if any company desired to deviate, it must do so uniformly on all classes.

In conformity with the 1933 amendment, the appellant, after the amendment became effective, filed its own schedules on certain classes of risks, and filed notice of its adoption of the bureau rates on other classes with a uniform deviation of twenty per cent. Because of the existing general conditions and at the request of the commission, appellant withdrew this filing, and for a time issued its policies at bureau rates.

Later, having ascertained that some participating stock companies and mutual companies were returning to their policy owners an average of some twenty per cent of the premiums paid in the form of dividends, and that it was losing business because it was unable to meet that competition, the appellant, in February, 1934, gave notice to the commissioner of its adoption of a deviation of twenty per cent from all of the bureau rates. To this notice, under date of February 23, 1934, the commissioner responded by a written communication, the body of which we quote:

"Referring to your letter of February seventh which was received during my absence from the state and was acknowledged by my deputy, Mr. Houghton, in which you submit for filing proposed deviations from the rates of the Washington Surveying and Rating Bureau applying uniformly to all classes of risks to be written by Northwestern National Insurance Company of Milwaukee, Wisconsin and its additional title 'The Northwestern Underwriters Agency' to become effective March 1, 1934, I will state that I must respectfully decline to accept such deviations.

"You are, therefore, hereby notified that your company is not authorized to quote rates and issue policies under said proposed deviations, and should your company do so I will be compelled to take action against

your company which would involve the cancellation of its license to do business in this state.

"I take this position as I deem it necessary to maintain a uniform application of insurance rates in my plan to stabilize the business in the state of Washington. In my efforts along this line the Washington Surveying and Rating Bureau have filed important amendments to their schedule which greatly modify the charges made in certain classifications, and in view of this filing I do not believe any deviations therefrom would be justified."

Upon receipt of this communication, the present action was promptly instituted. Other facts will appear as we progress.

It may be stated at the outset that the commissioner claims no statutory power to fix insurance rates, and that his action in the premises is defended upon the twofold theory that appellant's deviation of twenty per cent would result in an inadequate rate, and that, if permitted to write business at such an inadequate rate, in the judgment of the commissioner, a rate war would be precipitated. This defense is founded very largely, if not wholly, upon Rem. Rev. Stat., § 7157, which reads:

"Any company which precipitates, or aids in precipitating or conducting a rate war and by so doing writes or issues a policy of insurance at a less rate than permitted under their schedule filed with the commissioner, or below the rate deemed by him to be proper and adequate to cover the class of risk insured, shall have its license, and those of its agents, to do business in this state, suspended until such time as the commissioner is satisfied that it is charging a proper rate of premium."

Indeed, our attention has not been called to any other statutory provision which, under any conditions, authorizes or permits the commissioner to inquire into what is a proper and adequate rate.

Apparently, in framing the code, great care was exercised not to interfere with or limit the right of competition. The insurance companies must file their rates and adhere to those rates until they are properly changed, but, apparently, the companies are the sole judges of what is a proper and adequate rate, except only when a rate war is in progress.

So, here, as the record shows, ever since 1917 (save only when, as already mentioned, it for a few months conformed to bureau rates at the commissioner's request), the appellant company has deviated from bureau rates and has written cut rate insurance, apparently with results satisfactory to itself, and during most of the time other companies have pursued a like course, resulting, no doubt, in substantial benefits to purchasers of insurance who preferred to deal with cut rate companies.

The commissioner, in his formal rejection of the proposed deviations, says nothing about a rate war, but on the trial below he testified that, based upon experience, in his judgment,

". . . it would precipitate a rate war which would demoralize the institution of fire insurance and be helpful to no one, either to the company or to the public."

We accept this as the honest judgment of an honest official eager to do his full duty and desirous of averting the "horrors of war," but we fear it is not enough. The statute does not speak in prospective terms. It treats of a rate war only as an actual, existing, subsisting condition, and until that condition actually comes into being the provisions of § 5157, *supra*, cannot operate.

To hold otherwise would be to exalt forecasting and prophecy to the high level of actuality. Until the

legislature in its wisdom shall say "when, in the opinion of the commissioner, the cutting of rates will threaten to incite a rate war," or words to that effect, we must hold that only an actual rate war then in progress will justify the commissioner in rejecting proposed scheduled rates as being improper and inadequate. Any other course would lead to the greatest of uncertainty. The plain purpose of the law to maintain the competitive principle would be seriously endangered. Mere opinion, however honest, even though founded upon reasonable probabilities, must not defeat the legislative intent to maintain competition.

Under the insurance code, the right to compete for business remains, as at common law, wholly unimpaired, save only when a rate war is actually in progress. Just where competition ends and war begins, may be a very nice question upon which the minds of reasonable men might differ, but fortunately that question is not in this case. Here, no one asserts that the dividing line has been passed. It would seem that there must be at least two contending forces to make a war, and therefore the mere lowering of rates by one, while it may prove to be the inducing cause, cannot of itself create an actual war. Such lowering of rates may amount to the casting of the gage of battle, but until another picks up the gage thus cast and aggravates the situation by a similar or greater cut in rates, there is no actual war. When the war has actually developed, it may appear that the company which made the first cut in rates precipitated or aided in precipitating the war, but the cause of the war cannot be determined under the statute until the war itself exists.

Much reliance is placed upon the case of *Continental Insurance Co. v. Fishback,* 154 Wash. 269, 282 Pac. 44. When the facts arose which were there involved a serious rate war had been long in progress and was

still being waged. The litigants and the court so well understood that condition that the fact was not even mentioned in the opinion. We cannot read that case as even touching upon the vital question which lies at the foundation of this case.

Here, there is no showing that a rate war exists. The fear that one may develop, even though logically demonstrable, is but a belief, which may or may not be verified by subsequent developments. The statute does not authorize the commissioner to interfere with the right of each insurer to fix its own rates or with the right to compete, on mere judgment or belief, but only when a condition of actual war exists. Section 7157 is a war measure only.

The judgment appealed from is reversed, with directions to enter a judgment in accordance with this opinion and the prayer of the petitioner.

BLAKE, GERAGHTY, and HOLCOMB, JJ., concur.

BEALS, C. J., concurs in the result.