[No. 21864. Department One. November 12, 1929.]

CONTINENTAL INSURANCE COMPANY, *Respondent*, v. H. O. FISHBACK, *Appellant*.[1]

[1]Reported in 282 Pac. 44.

*The Attorney General* and *E. W. Anderson,* for appellant Fishback.

*Ralph S. Pierce,* for intervener-appellant General Insurance Co. of America.

*Shank, Belt & Fairbrook,* for intervener-appellant Northwestern Mutual Fire Association.

*Fred G. Clarke* and *Preston, Thorgrimson & Turner,* for respondent.

PARKER, J.—The plaintiff insurance company commenced this action in the superior court for Thurston county seeking a judgment setting aside an order of the defendant Fishback, as insurance commissioner of the state of Washington, reading as follows:

"July 21, 1928

"Continental Insurance Company,

"New York, N. Y.,

"Gentlemen: Whereas it is my opinion that the Continental Insurance Company has precipitated and aided in precipitating and conducting a rate war and in so doing has written and is writing fire insurance in the state of Washington at a rate of premium below that which is deemed proper and adequate to cover the classes of risks insured.

"Now, therefore, by authority in me vested by Section 7157, Remington's Compiled Statutes, it is ordered that your license to do business in the state of Washington and those of your agents be, and the same are, hereby suspended until such time as your company elects to issue policies at a proper and adequate rate of premium.

"Dated at Olympia, Washington, this twenty-first day of July, 1928.                    H. O. Fishback,

"Insurance Commissioner."

The cause, being of equitable cognizance, proceeded to trial in the superior court sitting without a jury, resulting in a judgment setting aside the order of the commissioner, from which judgment the commissioner has appealed to this court.

The ground upon which the trial court set aside the order of the commissioner, stated in its judgment, is:

". . . that the statute under which the commissioner acted in suspending the license of plaintiff herein, being Rem. Comp. Stat., § 7157, is unconstitutional."

Manifestly, the trial court so ruled upon the theory that the statute violates the constitutional due process of law and equal privilege and immunity guaranties, in that it vests arbitrary power in the commissioner to suspend a license of an insurance company because it prescribed no sufficient standard of cause or causes as ground for such suspension; and in that it makes no provision for any notice to the licensee affording it op-

portunity of being heard before the commissioner prior to suspension of the license by the commissioner.

The provisions of our insurance code, referring to sections of Remington's Compiled Statutes, which it seems necessary for us to here notice, are the following:

"§ 7039.  If the commissioner is of the opinion upon examination or other evidence that any insurance company is in an unsound condition, or that it has failed to comply with the law or with the provisions of its charter or articles of incorporation or association, or that its condition is such as to render its proceedings hazardous to the public or to its policyholders, or that its actual assets exclusive of its capital are less than its liabilities, or if its trustees, directors, officers, or agents refuse to submit to examination or to produce its books, records, accounts, and papers in its or their possession or control relating to its business or affairs, for examination and inspection of the commissioner, his deputy or examiner, when required, or shall refuse to perform any legal obligation relative to such examination, the commissioner shall revoke or suspend all certificates of authority and licenses granted to such insurance company, its officers or agents, and shall cause notice thereof to be given to such company and to each agent of such company in this state, and no new business shall thereafter be done by such company or for such company by its agents, in this state, while such revocation, suspension, or disability continues, nor until its authority to do business is restored by the commissioner.

"Unless ground for revocation or suspension relates only to the financial condition or soundness of the company or to the deficiency in its assets, the commissioner shall notify such company not less than ten days before revoking its authority to do business in this state; and he shall specify in such notice the particulars of the alleged violation of law or of its charter or articles of incorporation or association, or grounds for revocation.  The superior court, upon petition of such company, brought within twenty days, shall sum-

marily hear and determine the question whether such violation has been committed, or whether it is solvent or in an unsound condition or has exceeded its powers or has failed to comply with any provisions of the law or of its charter or articles of incorporation or association, or that its condition is such as to render its further proceedings hazardous to the public and to its policy holders, and the court upon such hearing and determination shall make and enter such order or decree as may be proper in the premises."

"§ 7118. Every insurance company, excepting a marine insurance company, before it shall receive a license to transact the business of making insurance as an insurer in this state, must file in the office of the insurance commissioner its rating schedules. Every such company and its agents shall observe its rating schedules and shall not deviate therefrom when making insurance until amended or corrected rating schedules shall have been filed in the office of the insurance commissioner.

"Any company which shall make fire insurance in this state according to the advisory rates, or stated deviation or deviations therefrom, furnished by a rating bureau as provided in the following section, may receive a license to transact the business of making fire insurance in this state, without filing rating schedules, by filing written notice in the office of the insurance commissioner of its adoption of such advisory rates, stating the deviation or deviations therefrom, if any, at which it will make insurance, which deviation or deviations, if any, shall be uniformly applied to all purchasers of insurance from any such company in this state, in the class or classes to which such deviation or deviations apply."

Section 7119 provides for the organization of and rendering service by rating bureaus.

"§ 7157. Any company which precipitates, or aids in precipitating or conducting a rate war and by so doing writes or issues a policy of insurance at a less rate than permitted under their schedules filed with the commissioner, or below the rate deemed by him to be proper and adequate to cover the class of risk in-

sured, shall have its license, and those of its agents, to do business in this state, suspended until such time as the commissioner is satisfied that it is charging a proper rate of premium.''

This last quoted section, it will be noticed, is the statutory provision which the trial court held to be unconstitutional.

■ Apparently, the trial judge assumed that § 7157 was to be looked to alone for an answer to the question of whether or not respondent insurance company's constitutional rights would be violated by the suspension order of the commissioner. This, we think, is too narrow a view of the controlling provisions of our insurance code touching the question of want of notice and hearing. Section 7157 does not provide for any procedure incident to the suspension or revocation of a license. It merely specifies grounds for suspension of a license in addition to those specified in § 7039, above quoted, which section is general in its terms and provides for the procedure by which suspension or revocation of a license may be effected. It seems to us that § 7039 and § 7157 must be read together. They were both embodied in our insurance code of 1911 and have remained unchanged since that time. See Laws of 1911, pp. 167, 247, §§ 8, 111 (Rem. Comp. Stat., §§ 7039, 7157). We are of the opinion that, reading these two sections together, they express the legislative intent that the procedure prescribed by § 7039 is to be followed whether the matter of suspension or revocation becomes a matter for consideration for causes specified in that section or in § 7157.

■ Is there sufficient notice and opportunity for hearing prescribed by § 7039 to satisfy the constitutional due process of law guaranty? It may be that, by the terms of that section, the commissioner is not required to give notice awarding a hearing to the li-

censee before himself, and that a suspension or revocation order made by him may rest upon his *ex parte* inquiry as to facts he conceives sufficient to justify such an order. But it is to be noticed that the commissioner is, in any event, required to notify the licensee "not less than ten days before revoking its authority to do business in the state," except in cases of delinquency not here in question. As we say, this may not contemplate a hearing before the commissioner, but it plainly contemplates that the revocation cannot become effective until ten days after the notice is given to the licensee.

This at all events gives the licensee an opportunity, before revocation or suspension becomes effective, to carry the matter to the superior court and there have a hearing as to whether or not the suspension or revocation is well grounded, and also a preliminary order of the court holding the suspension or revocation order in abeyance pending the disposition of the matter by the court. Plainly, we think this satisfies the due process of law constitutional guaranty in so far as notice and hearing are concerned. In this case, respondent did carry the question of his suspension by the commissioner to the superior court by appropriate action commenced as provided by § 7039, wherein the court, by a preliminary order, held the suspension order in abeyance, pending disposition of the matter by the court; which order was entered before the expiration of the ten-day period when the suspension order would have become effective under § 7039. We note that the suspension order did not in terms make the suspension effective ten days after its issuance, but it meant that under § 7039.

It is contended in behalf of respondent, and the trial court so ruled, in substance, that § 7157 does not

sufficiently. prescribe any standard for the commissioner determining delinquent conduct of a licensee calling for revocation or suspension of its license, particularly as to a licensee issuing policies ''below the rate deemed by him to be proper and adequate to cover the class of risk insured.'' It seems to have become settled by the decided weight of authority, and so recognized in this state, that the insurance business is affected with a public interest such as will subject those engaged in it to regulation substantially to the same extent as public service corporations are subjected to regulation, even to the extent of regulation of premium rates. See *German Alliance Insurance Co. v. Lewis,* 233 U. S. 389; L. R. A. 1915C, p. 1189, and note in latter volume; *Northwestern Nat. Ins. Co. v. Fishback,* 130 Wash. 490, 228 Pac. 516.

█ The language of § 7157, ''rate deemed by him [commissioner] to be proper and adequate to cover the class of risk insured,'' we think, means only a fair and reasonable rate determinable by usual and fairly well known standards. Manifestly, the language does not mean that the commissioner may, by his unrestrained whim or caprice, determine the rate to be charged. Plainly, he must act in a judicial sense in that behalf just as any rate-determining body must act, and as the court must act in reviewing his determination. We are of the opinion that the standard is sufficiently expressed in the language of § 7157. The following and many other decisions of the courts support this conclusion: *Town of Sumner v. Ward,* 126 Wash. 75, 217 Pac. 502; *State ex rel. Lane v. Fleming,* 129 Wash. 646, 225 Pac. 647, 34 A. L. R. 500; *Brown v. Seattle,* 150 Wash. 203, 272 Pac. 517; *Mutual Film Corporation v. Ohio Industrial Commission,* 236 U. S. 230; *Hall v. Geiger-Jones Co.,* 242 U. S. 539; *Douglas v. Noble,* 261 U. S. 165.

■ ˙ Just what disposition of this appeal we should now make is a matter somewhat difficult of proper determination. First, what is the real meaning of the suspension order made by the commissioner, in view of the fact that it does not state any premium rate at which the respondent insurance company may issue its policies? Shall respondent continue to issue policies at some previously filed and approved premium rates, or shall it entirely suspend issuance of policies until a proper rate has been determined anew by the commissioner? A little history leading up to the making of this suspension order by the commissioner will aid our inquiry.

Several years ago, respondent regularly filed its rating schedules, adopting the rating bureau schedule of rates, with certain specified deviations in accordance with § 7118, above quoted. Thereafter, in June, 1927, respondent, jointly with a number of other insurance companies, filed new rating schedules, adopting further deviations from the rating bureau schedules, lowering their rates uniformly. The commissioner accepted this filing, but addressed a letter to the several companies, including respondent, as follows:

"Olympia, Washington,
"June 17, 1927.

"Gentlemen:

"Please be advised that it will be necessary that you file with this department at a date not later than September 1, 1927, a statement from each company named on the attached list, showing the amount of net premiums which said company has received on the classes of insurance named in this filing for the years ending December 31, 1924, December 31, 1925, and December 31, 1926, also a statement of the net amount of losses during the same period and the total expense ratio for the underwriting of said premiums, the above statement in each case to be sworn to by some officer or

manager or general agent of the company who is competent to make such oath.

"This statement is necessary in order that we may determine whether or not the companies as a whole are justified in filing the said deviations.

"Very truly yours,
"H. O. Fishback,
"Insurance Commissioner."

Nothing further was done touching the schedules and deviations filed in June, 1927, until June 26, 1928, when a number of insurance companies, including respondent, acting jointly, tendered filing with the commissioner new schedules adopting further deviations, again lowering the rate approximately five per cent additional, to become effective July 11, 1928. Upon receiving this proposed filing, the commissioner, on July 2, 1928, addressed a letter to the companies, including respondent, as follows:

"Olympia, July 2, 1928.

"Mr. Fred G. Clarke
"Attorney-in-Fact
"Alaska Building
"Seattle, Washington.
"Dear Sir:

"This department is in receipt of your letter of June 26, submitting on behalf of the several companies for which you hold powers of attorney, a schedule of deviations from the rates of the Washington Surveying and Rating Bureau, which said schedule increases the percentage of deviation over the schedule heretofore filed by said companies.

"At the time the former deviations from the bureau rates were accepted for filing the several companies submitting the same were advised, under date of June 17, 1927, that it would be necessary for them to submit to this department a statement showing the net premiums received in this state on the classes affected for the three year period—1924, 1925 and 1926—together with a statement of net amount of losses and expense ratio during the same period, this statement being

necessary in order that the department might determine whether such deviation was justified by the experience of the companies as whole. With but few exceptions, the companies have failed to supply the data requested.

"You are, therefore, advised that the schedule of deviations which you now submit cannot be approved for filing or used in effecting insurance in this state, until the statements requested have been submitted and the department has had an opportunity to determine whether the experience of the companies as a whole will justify the increased deviation.

"Very truly yours,
"(Signed) H. O. Fishback,
"Insurance Commissioner."

This was the first unqualified disapproval by the commissioner of any schedule of rates filed by respondent. Thereafter on July 21, 1928, the commissioner made and communicated to respondent its suspension order here in question. These facts, it seems to us, call for an interpretation of the suspension order as meaning no more than that the license of respondent be suspended only in so far as it might be entitled thereunder to issue its policies at a premium rate in accordance with its newly filed rate schedule, to become effective July 11, 1928, leaving it free to issue its policies at a premium rate in accordance with its prior schedule of rates filed in June, 1927. In other words, the suspension order was in substance but a disapproval of the schedule of rates attempted to be filed by respondent, to become effective July 11, 1928, in so far as deviations therein by deductions differed from its schedule of rates filed in June, 1927. This, it seems to us, was within the discretionary power of the commissioner pending further inquiry as to whether or not such proposed further deviation in rates is below the rate proper and adequate to cover the class of risk insured.

We conclude that the judgment of the superior court setting aside the order of the commissioner should be reversed. It is so ordered.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.