[No. 35042. *En Banc.* May 19, 1960.]

THE INSURANCE COMPANY OF NORTH AMERICA COMPANIES, *Appellant*, v. WILLIAM A. SULLIVAN, *as Insurance Commissioner, Respondent*, WASHINGTON SURVEYING AND RATING BUREAU, *Intervener.*[1]

[1]Reported in 352 P. (2d) 193.

*McMicken, Rupp & Schweppe,* for appellant.

*The Attorney General, Herbert H. Fuller, Chief Assistant,* and *Lloyd G. Baker, Assistant,* for respondent.

*Clarke, Clarke, Albertson & Bovingdon,* for intervener.

FINLEY, J.—The Insurance Company of North America Companies (hereinafter referred to as appellant) is an out-of-state insurer, authorized to write fire insurance in this state. The judgment of the trial court, from which this appeal is taken, affirmed a ruling of the Insurance Commissioner of the State of Washington (hereinafter referred to as respondent) that the appellant, under the applicable provisions of RCW 48.19 (Laws of 1947, chapter 79, § 19, p. 380, as amended, in part, by Laws of 1957, chapter 193, p. 726) relating to insurance rates, may not file *all* of its fire insurance rate schedules, independently, and, at the same time, retain any of the services of the Washington Surveying and Rating Bureau. This latter entity (hereinafter referred to as the rating bureau) is an insurance rating organization, duly licensed under RCW 48.19.170 (Laws of 1947, chapter 79, § 19.17) for the purpose, *inter alia,* of filing with the respondent insurance rate schedules for subscribing members, such as appellant. A rating organization pro-

posing to act as such with respect to insurance under standard form fire policies must be conducted as a nonprofit public service institution, owned in trust for the benefit of its insurance company subscribers. RCW 48.19.170 (2) (b).

For a number of years prior to April 17, 1958, the appellant had been a subscriber of the rating bureau. The bureau had been authorized to make and had made all of the appellant's fire insurance rate filings. However, on the above-noted date, the appellant, itself, filed a complete set of fire insurance rates with the respondent and, simultaneously, informed the respondent that it would continue to utilize certain of the rating bureau services, but that, henceforth, it would assume sole responsibility for its own rates and filings. The rate schedule which appellant filed was identical to the rate schedule last previously filed for appellant by the rating bureau. The respondent commissioner rejected the appellant's independent filing on the sole ground that, in his opinion, the appellant, while continuing to affiliate with the rating bureau, could not legally make independent filings as to the classes of insurance respecting which the rating bureau was empowered by law to make filings on behalf of its subscribers. The appropriate procedure for review of this ruling was followed by the appellant. In the trial before the Superior Court for Thurston county, the judge affirmed the ruling of the respondent commissioner.

It is apparent from the brief submitted by the rating bureau, as an intervener in the instant case, as well as from the briefs and arguments of both the appellant and the respondent, that a rating organization is essentially a research body, the end product of such research being the promulgation of rates, rules and forms for fire insurance and allied lines of insurance for the benefit of affiliated insurers. Obviously, it is not mandatory for an insurer to affiliate with a rating organization (RCW 48.19.150), and it is not disputed that independent filings may be made by a nonaffiliated insurer. On the other hand, RCW 48.19.050 (2), (Laws of 1947, chapter 79, § 19.05, amended by Laws of 1957,

chapter 193, § 13, in a manner immaterial to the instant problem) expressly provides:

"As to fire insurance under a standard form fire policy, . . . an insurer may . . . authorize a rating organization to make all its filings only, and *may not make a portion of such filings on its own behalf and authorize a rating organization to make other such filings.* . . ." (Italics ours.)

Apparently, in the instant case the appellant desires to be neither completely independent of the rating bureau (which, as we have observed, is clearly permissible) nor an affiliate in the sense that is prohibited by the above-quoted portion of RCW 48.19.050 (to make some filings on its own behalf, while authorizing the rating bureau to make other filings). Rather, it appears that the appellant wishes to affiliate with the rating bureau for the purpose of utilizing the research product of that organization, and, at the same time, to make *all* of its filings, independently.

■ Before we examine the respective arguments of the parties relative to this issue, we must dispose of a preliminary matter. The respondent commissioner urged in the trial court, and reiterates on this appeal, that, inasmuch as the appellant's independent filings of April 17, 1958, were identical to the rate schedule previously filed on behalf of the appellant by the rating bureau, the appellant has not been aggrieved by the respondent's ruling rejecting the independent filing, and, therefore, has no standing to challenge that ruling. We cannot agree with this contention. RCW 48.19.280 (Laws of 1947, chapter 79, § 19.28, as immaterially amended by Laws of 1957, chapter 193, § 14) contains a limitation upon the freedom of those insurers whose rate schedules are filed by a rating organization to deviate from the filed rate schedule, whereas no such statutory limitation on deviation is imposed on those insurers making independent filings. Thus, the respondent's rejection of the appellant's independent filing denied the appellant not merely an authorized rate schedule identical with the rate schedule previously allowed; but it also denied appellant the right to deviate from its authorized

rate schedule beyond the narrow limitations imposed by the above-noted RCW 48.19.280.

We turn now to a consideration of the primary issue involved in this appeal, which, for the sake of clarity and ease of reference, may be restated as follows: May an insurer, authorized to write fire insurance in this state, affiliate with a rating organization, such as the rating bureau, for the purpose of utilizing the research product of such organization and, at the same time, make all of its rate filings with the respondent insurance commissioner independently?

As a starting point, it is undisputed that the appellant, because it writes fire insurance in this state, is governed as to rates by RCW 48.19.010, *et seq.* Therefore, before it uses a particular rate schedule, appellant must cause such rate schedule to be filed with and approved by the respondent commissioner. RCW 48.19.040.

The arguments of the respective parties to this appeal consist, primarily, of references to various sections and subsections of the governing statute, RCW 48.19, which, they contend, supports their particular view. Respondent's position may be summarized as follows: (1) A fire insurance rating organization "shall not be connected with any insurer or insurers except to the extent that any such insurer may be a subscriber to its services." RCW 48.19.170(2)(c). (2) " 'Subscriber,' for the purposes of this chapter and where the context does not otherwise specify, means any insurer which employs the services of a rating organization for the purpose of making filings, . . ." RCW 48.19.140(2). (3) "Every subscriber to a rating organization shall adhere to the filings made on its behalf by such organization, and shall not deviate therefrom except as provided in this section." RCW 48.19.280(1). In essence, then, the respondent's claim is that (a) the only relationship permitted between an insurer and a fire insurance rating organization is one of subscribership; and (b) an insurer, upon becoming a subscriber, thereby authorizes the rating organization to make *all of its filings*, and becomes bound not to deviate therefrom except as permitted by RCW 48.19.280.

Appellant concedes that a fire insurer, desiring to affiliate with a fire insurance rating organization, may do so only as a "subscriber." However, it strongly contends that nothing contained in RCW 48.19 expressly precludes an insurer from becoming a subscriber, thereby availing itself of the rating organization's research product, while making *all* (as opposed to some) of its (appellant's) rate filings independently. Appellant, contending that the legislature intended to distinguish between a rating organization's *rate making* (research) function and its *filing* function, points in particular to RCW 48.19.160, which provides that:

"No rating organization shall do business in this state *or* make filings with the commissioner unless then licensed by the commissioner as a rating organization." (Italics ours.)

Lastly, appellant urges that, by defining a subscriber as "any insurer which employs the services of a rating organization for the purpose of making filings" (RCW 48.19.140-(2)), the legislature did not (contrary to the position taken by the respondent) intend that the act or fact of subscribership should constitute a grant of authority to the rating organization to make rate filings on behalf of the subscribing insurer.

As we view the case, this last contention goes to the crux of the matter before us. Clearly, a rating organization cannot make filings for an insurer unless the insurer has authorized it to do so. Under RCW 48.19.050 (2), which we have earlier quoted, if an insurer does authorize a rating organization to make filings on its behalf, such insurer must authorize the rating organization to make all of its filings. But to construe the statutory (RCW 48.19.140(2)) definition of "subscriber," *i.e.*, "any insurer which employs the services of a rating organization for the purpose of making filings," as if it read, "any insurer which authorizes a rating organization to make all filings on its behalf," is to read into the statute words which were simply not used by the legislature. At best, RCW 48.19.140(2) is ambiguous as to the legislature's true purpose and meaning.

Perhaps, if we were free to give to the provisions of RCW 48.19 (and particularly those sections dealing with the func-

tion of insurance rating organizations) a liberal construction, we might find some substantial merit in the position taken by the respondent. However, we believe that RCW 48.19 must be read in the light of another and separate provision of the Insurance Code; namely, RCW 48.30.020 (Laws of 1947, chapter 79, § 30.02), commonly known as the *anti-compact statute*. This statute reads as follows:

" (1) No person shall either within or outside of this state enter into any contract, understanding or combination with any other person to do jointly or severally any act or engage in any practice for the purpose of

" (a) controlling the rates to be charged for insuring any risk or any class of risks in this state; or

" (b) unfairly discriminating against any person in this state by reason of his plan or method of transacting insurance, or by reason of his affiliation or nonaffiliation with any insurance organization; or

" (c) establishing or perpetuating any condition in this state detrimental to free competition in the business of insurance or injurious to the insuring public.

" (2) This section shall not apply relative to ocean marine and foreign trade insurances.

" (3) *This section shall not be deemed to prohibit the doing of things permitted to be done in accordance with the provisions of chapter 48.19 of this code.*

" (4) . . . [Enforcement provision, not material to the instant case.]." (Italics ours.)

█ The respondent not merely concedes, but affirmatively argues, that the purpose of the rating organization device created by RCW 48.19 is to control and encourage the uniformity of insurance rates, and particularly fire insurance rates. However, pursuant to the above italicized portion of the *anti-compact statute*, control of insurance rates and the establishment of conditions detrimental to free competition through use of the rating organization device created by RCW 48.19 constitutes an exception to the general prohibitions contained in subsection (1) of the *anti-compact statute*. In view of this, it is our opinion that the controls authorized by RCW 48.19 must be strictly construed. *State v. Christensen* (1943), 18 Wn. (2d) 7, 137 P. (2d) 512, 146 A. L. R. 1302; *cf. Seattle v. Western Union Telegraph Co.*

(1944), 21 Wn. (2d) 838, 153 P. (2d) 859, and cases cited therein. In cases where a statute or ordinance provides for stated exceptions, no other exceptions will be assumed by implication. *Sandona v. Cle Elum* (1951), 37 Wn. (2d) 831, 226 P. (2d) 889; *Monroe Calculating Machine Co. v. Department of Labor & Industries* (1941), 11 Wn. (2d) 636, 120 P. (2d) 466.

■ Applying these rules of construction to the instant case, we conclude that, in the absence of clear and unambiguous statutory language to the contrary, the legislature did not intend that an insurer, by becoming a subscriber to the services of a fire insurance rating organization, thereby should be deemed to have authorized the rating organization to make rate filings on its behalf. The legislature, of course, did clearly and expressly provide that (pursuant to RCW 48.19.050(2)), if an insurer grants to a rating organization the authority to make any of the insurer's filings, such insurer must authorize the rating organization to make all of the insurer's filings. Had the legislature intended that the act of subscribership, itself, should constitute a grant of such authority, it could have used similarly clear and unambiguous language.

The result we have reached herein is what we believe the legislature intended. If this (through our emphasis upon or application of certain rules of statutory construction) may be at variance with legislative intent, purpose or policy respecting the problem of regulating fire insurance rates, the matter can be adjusted by the legislature at its session in January, 1961, by a clarifying amendment of the pertinent provisions of the insurance code.

As hereinbefore indicated, the judgment of the trial court should be reversed on the ground that, in affirming the respondent's rejection of the appellant's independent filing of April 17, 1958, the trial court misconstrued the applicable statutory provisions. It is so ordered.

WEAVER, C. J., MALLERY, HILL, DONWORTH, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

OTT, J., concurs in the result.

FOSTER, J. (concurring)—While I have signed the court's opinion, I do so because of the belief that the court holds that (1) RCW 48.19 must be strictly construed, and (2) such a construction properly leads to the conclusion that appellant is a "subscriber" within the statute (RCW 48.19-.140(2)) defining a subscriber as ". . . any insurer which employs the services of a rating organization for the purpose of making filings . . ." One who utilizes the research services of a rating organization employs those services *for the purpose of making filings*, albeit its own filings.

With this reservation, I have signed and concur in the court's opinion.