[No. 38195. En Banc. March 21, 1967.]

INSURANCE COMPANY OF NORTH AMERICA, *Appellant*, v. LEE I. KUECKELHAN, *Respondent*.*

*Reported in 425 P.2d 669.

*Schweppe, Reiter, Doolittle & Krug* and *Mary Ellen Krug,* for appellant.

*The Attorney General* and *Basil L. Badley, Assistant,* for respondent.

HAMILTON, J.—Appellant, an out-of-state insurance company, prosecutes this appeal from a judgment of the superior court affirming an order of the Insurance Commissioner. The order in question adopts a regulation, promulgated by the Insurance Commissioner, which requires that all insurers writing property insurance (known in the insurance industry as "fire and allied lines") in the state of Washington submit pertinent documents upon each policy issued to a licensed and existing examining bureau for the purpose of ascertaining whether lawful rates are being charged.

We affirm the judgment of the superior court.

The background and procedural events may be briefly chronicled in the following manner: In 1911, the state legislature adopted a comprehensive insurance code (Laws of 1911, ch. 49). Section 101 of that code provided:

> After the first day of January, nineteen hundred thirteen, the commissioner, if he deem it necessary for the detection and correction of errors or discovery of violations of this act in effecting insurance, if any be commit-

ted, may permit an inspecting or stamping bureau to be maintained under the supervision of a deputy commissioner for the purpose of inspecting all daily reports of fire insurance risks located in this state.

In 1913, an examining bureau, in the nature of an independent voluntary association, was established at the behest of and utilized by stock property insurers. This bureau has continued in existence since that time and is now known as the Washington Insurance Examining Bureau, Inc. In 1930, the then Insurance Commissioner, H. O. Fishback, issued a directive, the pertinent part of which reads:

Pursuant to the provisions of the above section [Laws of 1913, ch. 49, § 101], a Supervisor of Inspection Bureau will be maintained under the direction of this department in the office of the Insurance Examiner (Walter F. Keene), where all daily reports of fire insurance risks will be inspected. This work will be in charge of Mr. C. H. Cole, who has had many years experience in the fire insurance business in the state of Washington, and who will be in a position to render every service to companies, agents and the insuring public in the maintenance of uniform rates and practices in matters pertaining to the business of fire insurance.

It is, therefore, ordered that all agents transacting a fire insurance business in this state shall immediately upon issue, on and after April 15th, mail a copy of each daily report, addressed simply to P. O. Box 3188, Seattle, Washington.

Most, if not all, stock companies, including appellant, complied with the directive. Mutual and fraternal insurers were not then deemed subject to the order, although later such insurers, with the exception of factory mutuals, were brought within the scope of the order.

In 1947, by Laws of 1947, ch. 79, as amended by Laws of 1957, ch. 193 (RCW Title 48), the legislature enacted the present insurance code. Under article 19 of chapter 79 entitled "Rates," the legislature included the following provision (section .19.41, now codified as RCW 48.19.410) entitled "Examination of Contracts," which, in pertinent part, reads:

1. The Commissioner may permit the organization and operation of examing bureaus for the examination of policies, daily reports, binders, renewal certificates, endorsements, and other evidences of insurance or of the cancellation thereof, *for the purpose of ascertaining that lawful rates are being charged.*

2. *A bureau shall examine documents with regard to such kinds of insurance as the Commissioner may, after hearing, reasonably require to be submitted for examination. A bureau may examine documents as to such other kinds of insurance as the issuing insurers may voluntarily submit for examination.*

3. No bureau shall operate unless licensed by the Commissioner as to the kinds of insurance as to which it is permitted so to examine. To qualify for a license a bureau shall:

(1) Be owned in trust for the benefit of all the insurers regularly using its services, under a trust agreement approved by the Commissioner.

(2) Make its services available without discrimination to all authorized insurers applying therefor, subject to such reasonable rules and regulations as to the obligations of insurers using its services, as to the conduct of its affairs, and as to the correction of errors and omissions in documents examined by it as are approved by the Commissioner.

(3) Have no manager or other employee who is connected with any rating organization, or who is an employee of an insurer other than to the extent that he is an employee of the bureau owned by insurers through such trust agreement.

(4) . . . .

4. Such license shall be of indefinite duration and shall remain in force until revoked by the Commissioner or terminated at the request of the bureau. The Commissioner may revoke the license, after hearing,

. . . .

5. *Any person aggrieved by any rule, regulation, act or omission of a bureau may appeal to the Commissioner therefrom. The Commissioner shall hold a hearing upon such appeal, and shall make such order upon the hearing as he deems to be proper.*

6. Every such bureau operating in this state shall be subject to the supervision of the Commissioner, and the

Commissioner shall examine it as provided in article three of this code. [RCW 48.03]

7. Every examining bureau shall keep adequate records of the outstanding errors and omissions found in coverages examined by it and of its receipts and disbursements, and shall hold as confidential all information contained in documents submitted to it for examination.

8. The Commissioner shall not license an additional bureau for the examination of documents relative to a kind of insurance if such documents are being examined by a then existing licensed bureau. *Any examining bureau operating in this state immediately prior to the effective date of this code under any law of this state repealed as of such date, shall have prior right to apply for and secure a license under this section.* (Italics ours.)

Following enactment of the foregoing provision, the existing examining bureau organized itself as a nonprofit corporation, executed the required trust agreements and was licensed by the Insurance Commissioner as the Washington Insurance Examining Bureau, Inc. (hereafter called the Bureau). Since then, and up until this action, it has continued to examine the daily reports submitted to it by the various insurers writing property coverage in the state of Washington, including appellant, but excepting "factory mutuals."[1] The submission of such daily reports by the various insurers was deemed by the Insurance Commissioner and the Bureau to be in compliance with the 1930 order of Commissioner Fishback. Appellant, however, contends, and asserts on its part, that all daily reports were submitted on a voluntary basis.

In 1962, the Insurance Commissioner apprehended that legal complications could arise out of the fact that, since the enactment of the insurance code in 1947, no hearing had been held concerning the kinds of insurance which should be submitted to the Bureau for examination. Accordingly, appropriate notices of hearing before the Commissioner were issued and at the appointed time interested

---

[1] A "factory mutual" insurer is a specialized concern dealing exclusively in coverage involving large industrial operations. Rating manuals are not ordinarily filed or used because the number of policies issued is limited and premiums must be tailored to fit each particular policy.

insurers, including appellant, and the Bureau, appeared and presented their views, either orally or in writing, all of which were made a part of the record of the hearing. Thereafter, and after an intervening court proceeding, the Commissioner entered the following findings and order, to be effective as of March 20, 1964:

I hereby make the following findings:

1. The Washington Insurance Examining Bureau, Inc. is an examining bureau duly licensed by the Insurance Commissioner of the State of Washington, to examine, among other kinds of insurance, property insurance as defined in RCW 48.11.040.

2. Since the 15th day of October, 1930, the office of the Insurance Commissioner of the State of Washington has continuously required all daily reports and other documents relating to fire insurance and allied lines to be submitted to the Washington Insurance Examining Bureau, Inc. for examination for the purpose of determining whether lawful rates are being charged.

3. Substantial credible evidence was submitted supporting the need for an examination of the daily reports, policies, binders, renewal certificates, endorsements, and other evidences of insurance or the cancellation thereof, which relate to fire insurance and allied lines.

4. In 1961, the Washington Insurance Examining Bureau, Inc. examined 517,412 new daily reports of fire insurance and allied lines and issued 71,421 criticisms therefor for errors discovered, or approximately 14 per cent of such policies which were erroneously written.

5. A great majority, if not all, of the 71,421 policies of fire insurance and allied lines erroneously written would have been so issued and would not have been discovered if the daily reports had not been sent to the Washington Insurance Examining Bureau, Inc. for examination.

6. It is in the public interest to require every insurer authorized to write property insurance in the State of Washington to submit to the Washington Insurance Examining Bureau, Inc. all policies, daily reports, binders, renewal certificates, endorsements, and other evidences of insurance, or the cancellation thereof, which relate to fire insurance and allied lines.

7. The cost to the property insurers submitting such documents to the Washington Insurance Examining Bu-

reau, Inc. is reasonable and is no undue burden to the insurance industry.

8. Examination by an insurer itself is no examination at all.

9. No substantial evidence was submitted supporting the examination of a kind of insurance other than fire insurance and allied lines.

Now, THEREFORE, being fully informed I hereby adopt the following order and regulation upon the foregoing findings and pursuant to RCW 48.02.060(3)(a), RCW 48.19.040(3), RCW 48.19.280(1), and RCW 48.19.410(2):

For the purpose of ascertaining that lawful rates are being charged and that insurers are adhering to filings made by them or on their behalf, every insurer authorized to write property insurance in the State of Washington shall submit to the Washington Insurance Examining Bureau, Inc., for examination, all policies, daily reports, binders, renewal certificates, endorsements and other evidences of insurance or the cancellation thereof, which relate to property insurance as defined in RCW 48.11.040 (known in the insurance industry as "fire and allied lines.")

Nothing in this regulation shall be construed to require the submission for examination of such enumerated documents which relate exclusively to coverages which are defined by the insurance code or by regulations of the Insurance Commissioner to be marine, inland marine, vehicle, or casualty insurance. The submission of these, if any, shall be on a voluntary basis.

Appellant timely appealed to the Superior Court for Thurston County, pursuant to the provisions of RCW 48.04.100 and 48.04.110,[2] contending in essence that the

---

[2] "(1) Any person aggrieved on account of any official action or threatened action of the commissioner, or of his failure to act if such failure is deemed to constitute an act under any provision of this code, may demand a hearing thereon as provided in RCW 48.04.010, and may appeal from the commissioner's order made pursuant thereto. Such appeal shall be taken only to the superior court for Thurston county and only from an order refusing a hearing or an order on hearing. An appeal may be so taken by any person aggrieved by such order refusing a hearing or by such order on hearing.

"(2) The appeal must be taken within thirty days after the order complained of was given by the commissioner, or, if the order was published as provided in RCW 48.04.090, within thirty days after the

Commissioner's findings lacked evidentiary support and that his order was arbitrary, capricious, unlawful, and/or unconstitutional.

A full and complete transcript of the record of the hearing before the Insurance Commissioner was filed with the superior court, as required by RCW 48.04.120.[3] At the time of the hearing before the superior court, appellant, relying upon RCW 48.04.130,[4] proffered and was permitted to adduce substantial oral and documentary proof not offered or presented at the hearing before the Insurance Commissioner. This was received over the objection of respondent and with the trial court reserving a ruling as to its admissibility.

The main theme of appellant's supplementary evidence was to the effect that appellant and other similar insurers could examine their own insuring documents as effectively and efficiently as could the Bureau. Without waiving objection to such evidence, respondent produced rebuttal evidence bearing upon the advantages to be derived by Bureau

date of the last such publication. If not so taken, the right to appeal from or restrain action under the order shall conclusively be deemed to have been waived." RCW 48.04.100.

"The appeal shall be taken by filing with the clerk of the superior court for Thurston county a petition for a review of the commissioner's order, containing a copy of the order and a statement of the particulars in which it is claimed that the order is in error and a statement of the relief prayed for, and by serving upon the commissioner a copy of the petition, certified by the clerk of the court to be a true copy." RCW 48.04.110.

[3] "Upon being served with a copy of the petition for review of an order on hearing, the commissioner shall forthwith prepare and file with the clerk of the court a true and complete transcript of his record of the hearing on which the order appealed from was made. The cost of the transcript may be included in the costs allowed by the court." RCW 48.04.120.

[4] "The court shall give precedence to and may summarily hear and determine the appeal. The court shall hear the appeal upon the transcript of the record of the commissioner's hearing and on such additional proper evidence as may be offered by any party. After considering the evidence the court may affirm, modify, or set aside the order appealed from. Costs shall be awarded as in civil cases." RCW 48.04.130.

examination from the standpoint of detecting and correcting premium rate violations.

Following the hearing, the trial court determined that the challenged order of the Insurance Commissioner was administrative and regulatory in nature, that appellant's evidence had been improperly admitted, and that based upon the record of the proceedings before the Insurance Commissioner the order was neither arbitrary, capricious, nor contrary to law. Judgment dismissing the appeal was then entered, from which this appeal flows.

Appellant makes 16 assignments of error, which, for convenience of discussion, reduce themselves to a challenge of (a) the statutory authority by which the Insurance Commissioner purported to act in promulgating and adopting the regulation in question; (b) the refusal of the trial court to consider the evidence produced at the trial; (c) the sufficiency of the evidence to support the various findings of the Insurance Commissioner, and, in turn, the sufficiency of the findings to sustain or justify the order; and (d) the constitutionality of the Insurance Commissioner's order.

## A. STATUTORY AUTHORITY

Under this category, appellant first points to our decision in *Insurance Co. of North America Cos. v. Sullivan,* 56 Wn.2d 251, 352 P.2d 193 (1960), wherein we considered those provisions of RCW 48.19 (Laws of 1947, ch. 79, art. 19, as amended by Laws of 1957, ch. 193) dealing with and related to rating organizations, as distinguished from examining bureaus, and held that RCW 48.19 as a whole, being designated as an exception to the anticompact provisions of the insurance code (specifically RCW 48.30.020), must be strictly construed. From this premise, appellant then turns to the language of RCW 48.19.410, hereinbefore set forth, and asserts that, since this section of the statute does not expressly authorize the Insurance Commissioner to compel insurers to submit documents to the Bureau for examination, the Insurance Commissioner is without power so to do. In short, appellant argues, RCW 48.19.410 relates to and defines only the Insurance Commissioner's power over the

Bureau, and confers no administrative power over insurers who do not desire to utilize and pay for the examining services of the Bureau.

Respondent, upon the other hand, maintains that RCW 48.19.410 is clear and unambiguous in its grant of administrative power over insurers, or, if not, the anticompact provisions do not apply to it—thus, relieving it of the strict construction rule adopted in the *Sullivan* case, *supra*. Alternatively, respondent contends that RCW 48.19.410 does fairly grant the challenged administrative power, when viewed against the background of the overall purpose and intent of the insurance code and the various obligations and duties specifically placed upon insurers and the Commissioner thereby. Hence, respondent urges, the construction of RCW 48.19.410 sought by appellant would be strained rather than strict.

Without specifically passing upon respondent's first alternatives, we agree with his third ratiocination.

In the introduction to the insurance code, the legislature has declared:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance. RCW 48.01-.030.

In furtherance of this principle, and in the exercise of the state's police power, the legislature created the office of Insurance Commissioner and conferred upon that office the duty of enforcing the provisions of the code. In speaking of the Commissioner's authority in this respect, the legislature stated:

> (1) The commissioner shall have the authority expressly conferred upon him by or reasonably implied from the provisions of this code.
>
> . . . .
>
> (3) The commissioner may:
>
> (a) Make reasonable rules and regulations for effectuating any provision of this code, . . . .

(b) Conduct investigations to determine whether any person has violated any provision of this code.

(c) Conduct examinations, investigations, hearings, in addition to those specifically provided for, useful and proper for the efficient administration of any provision of this code. RCW 48.02.060.

Concerning insurer obligations under the code, the legislature intoned:

No insurer shall make or permit any unfair discrimination between insureds or subjects of insurance having substantially like insuring, risk, and exposure factors, and expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor, or in the benefits payable or in any other rights or privileges accruing thereunder. This provision shall not prohibit fair discrimination by a life insurer as between individuals having unequal expectations of life. RCW 48.18.480.

and

(1) Every insurer shall, before using, file with the commissioner every manual of classifications, manual of rules and rates, and every rating plan as to surety insurances, and every rating schedule, minimum rate, class rate, and rating rule as to other insurances, and every modification of any of the foregoing which it proposes.
. . .

(2) Every such filing shall state its proposed effective date and shall indicate the character and extent of the coverage contemplated. . . .
. . . .

(3) Where a filing is required no insurer shall make or issue an insurance contract or policy except in accordance with its filing then in effect, except as is provided by RCW 48.19.090 [Excess rates for specific risks]. RCW 48.19.040.

■ Against this background of administrative responsibility, investigative power, and regulatory authority coupled to specified insurer obligations, and with the knowledge of the use and availability of an existent examining bureau,[5] the 1947 legislature authorized the Commissioner

---

[5]This would appear evident from the grandfather provision contained in RCW 48.19.410(8), and the legislature's knowledge of the provisions of Laws of 1911, ch. 49, § 101.

to permit the continued operation of the examining bureau, subject to stated conditions and the Commissioner's supervision, *"for the purpose of ascertaining that lawful rates are being charged."*[6] (Italics ours.) The legislature then implemented this function and purpose by providing that such bureau "shall examine documents with regard to such kinds of insurance as the Commissioner *may*, after hearing, *reasonably require to be submitted for examination"* (Italics ours.), preserving, however, the availability of the examining bureau to insurers who might otherwise desire to use it.[7] Furthermore, the legislature provided that any one aggrieved by any determination of the examining bureau could appeal directly to the Commissioner who could, in turn, provide a hearing.

Bearing in mind the Commissioner's enforcement, regulatory, and supervisory powers, and that one of the legislatively announced purposes of the examining bureau is to protect the citizens of this state against advertent or inadvertent premium error, we are satisfied the legislature fully intended, by the language above quoted and italicized, to invest the Commissioner with discretionary power to require insurers, after hearing, to submit appropriate documents to the Bureau for examination.

### B. TRIAL COURT'S REJECTION OF APPELLANT'S EVIDENCE

In assigning error to the trial court's refusal to consider the evidence offered and admitted in the superior court, appellant relies upon RCW 48.04.130, which provides:

> The court shall give precedence to and may summarily hear and determine the appeal. The court shall hear the appeal upon the transcript of the record of the commissioner's hearing *and on such additional proper evidence as may be offered by any party.* After considering the evidence the court may affirm, modify, or set aside the order appealed from. (Italics ours.)

---

[6] RCW 48.19.410(1) heretofore quoted.

[7] RCW 48.19.410(2) heretofore quoted.

Appellant tacitly concedes that the order of the Commissioner here in issue was administrative or regulatory in nature, and that the trial court's review thereof was limited to ascertaining whether the Commissioner's decision was arbitrary and capricious or contrary to law. *Household Fin. Corp. v. State,* 40 Wn.2d 451, 244 P.2d 260 (1952); *Floyd v. Department of Labor & Indus.,* 44 Wn.2d 560, 269 P.2d 563 (1954); *In re Harmon,* 52 Wn.2d 118, 323 P.2d 653 (1958). However, appellant contends that, under and by virtue of the italicized portion of RCW 48.04.130, it was entitled to introduce evidence *de hors* the record made before the Commissioner bearing upon the wisdom or unwisdom of the challenged decision in order to demonstrate the alleged arbitrary and capricious nature of that decision.

We cannot agree with the full sweep of appellant's contention.

The legislature, in providing for hearings before the Insurance Commissioner and for appeals therefrom, outlined the procedure as follows:

(1) The commissioner shall preside at the hearing and shall keep a true and concise record of the proceedings thereat. Formal rules of pleading or evidence need not be observed in the hearing.

(2) At the expense of and at the written request seasonably made by any person affected by the hearing, the commissioner shall cause a full stenographic record of the proceedings to be made by a competent stenographic reporter and if transcribed such record shall be made a part of the commissioner's record of the hearing.

(3) The commissioner shall allow any person affected by the hearing to be present during the giving of all testimony and shall allow him a reasonable opportunity to inspect all documentary evidence, to examine witnesses, and to present evidence in support of his interest. Upon good cause shown, the commissioner may permit any person to intervene, appear, and be heard at the hearing.

(4) Any person heard shall make full disclosure of facts pertinent to the subject of inquiry as requested by the commissioner or by any person affected by the hearing. RCW 48.04.080.

and

> Upon being served with a copy of the petition for review of an order on hearing, the commissioner shall forthwith prepare and file with the clerk of the court a true and complete transcript of his record of the hearing on which the order appealed from was made. RCW 48.04.120.

It is thus apparent, when the foregoing sections are read in conjunction with RCW 48.04.130, that the legislature contemplated that, in an appropriate case, (a) the parties would be entitled to a full evidentiary hearing before the Commissioner, (b) a formal record and transcript of the proceedings would be available, (c) the record and transcript would be transmitted to the superior court upon appeal (d) the superior court would summarily review the proceedings upon the transcript of the record, unless there was proper occasion or reason for the introduction of additional evidence, and (4) the judicial relief would be limited to affirming, modifying, or setting aside the order appealed from.

■ Under these circumstances we do not conceive the legislature intended that the superior court, in the ordinary case, would go outside the record before it and delve into the merits of the issue debated before the Insurance Commissioner. In our view, the "additional proper evidence" which the legislature had in mind would necessarily be confined to evidence bearing upon and relevant to alleged irregularities occurring in the course of the Commissioner's proceedings, or, in cases where the Commissioner refused to grant a hearing, to evidence relevant to the necessity for a hearing. Otherwise, the superior court would become a tribunal of original rather than appellate jurisdiction, and the expertise of the Insurance Commissioner in the field of insurance would be squandered.

In the instant case, appellant was afforded a full opportunity to offer its evidence before the Insurance Commissioner. It chose not to do so. Instead, it elected to wait and seek to try the merits out before the superior court. This it

could not do under the statutory provisions above alluded to. The trial court did not err in refusing to consider appellant's evidence.

## C. Sufficiency Of The Evidence Before The Commissioner

Under this category, appellant challenges Nos. 2, 3, 5, 6, 7, 8, and 9 of the Commissioner's findings, and asserts that such findings are not supported by the evidence adduced before the Insurance Commissioner and, in any event, do not support or justify the challenged order, thus rendering the order arbitrary and capricious.

Appellant's argument basically revolves around its contention that the examination of policies conducted by an insurer is sufficient protection to the insuring public against erroneous or unlawful premiums, particularly if such self examination be accompanied by or coupled with a spot check by the Insurance Commissioner's office. The gist of the Commissioner's findings is, of course, to the contrary. The resultant order is essentially and practically speaking a policy decision as to how best to accomplish and afford the public protection which the legislature was seeking.

■ It is true that the evidence adduced before the Commissioner is not in unanimous accord with the order as finally entered. However, the evidence does readily lend itself to the interpretation and remedy adopted by the Commissioner in entering his findings and order. Under these circumstances, we deem the quotation from 2 Am. Jur. 2d *Administrative Law* § 672 (1962), set forth with approval in *In re case E-368*, 65 Wn.2d 22, 29, 395 P.2d 503 (1964), to be apropos. It is as follows:

> Administrative agencies have considerable latitude to shape their remedies within the scope of their statutory authority, especially where a statute expressly authorizes the agency to require that such action be taken as will effectuate the purposes of the act being administered. The relation of remedy to policy is peculiarly one for the administrative agency and its special competence, at least the agency has the primary function in this regard. In

particular cases, it is held that the fashioning of the remedy or the propriety of the order is a matter for the administrative agency and not for the court; that the courts may not lightly disturb the agency's choice of remedies; that the order should not be overturned in the absence of a patent abuse of discretion or a showing that it is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the statute; or that the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist, or is unwarranted in law or without justification in fact. Where there is a sufficient basis for the orders issued it is no concern of the court that other regulatory devices might be more appropriate, or that less extensive measures might suffice. Such matters are the province of the legislature and of the administrative agency.

Without detailing the evidence presented before the Insurance Commissioner, suffice it to say that our review thereof convinces us there is ample and substantial evidence to support the essential findings of the Commissioner, and that the remedy adopted by the Commissioner is not unwarranted in law or without justification in fact.

We conclude, as did the trial court, that the action of the Commissioner was neither arbitrary, capricious, or without evidentiary support.

D. CONSTITUTIONALITY OF THE COMMISSIONER'S ORDER

Appellant, upon this phase of the case, asserts that the Commissioner's order is unconstitutional because it (a) compels the purchase of services from a private agency, (b) amounts to an unlawful delegation of police power to a private entity, (c) creates a monopoly, and (d) is discriminatory in that it relates only to property insurance and does not include other kinds of insurance.

We find no sound basis in appellant's contentions for declaring the Commissioner's order unconstitutional.

In the first place, the Bureau, created as it is pursuant to RCW 48.19.410, and licensed, examined, regulated, and supervised by the Insurance Commissioner, is not, strictly speaking, a private agency. If anything, it is more in the

nature of a public or quasi-public corporation, authorized by the legislature to aid in ascertaining whether lawful premium rates are being charged by insurers doing business in this state. In this sense, it serves a public purpose, rather than a private purpose. Furthermore, the Bureau is a nonprofit undertaking. Its fees, according to the evidence adduced before the Commissioner, are nominal and impose no unjust hardship or unreasonable burden upon the insurance industry. And, the requirement that pertinent documents be submitted to the Bureau by the affected insurers was not invoked without affording them a full and fair hearing, after notice, and with knowledge on their part of the potential cost of such services. Little, if any, complaint relative to cost was seriously registered by other insurers appearing at the hearing.

In the second place, the only authority or responsibility vested in the Bureau by the Commissioner's order is purely ministerial in nature, i.e., examination of documents to ascertain whether premium rates are in proper accord with the rating manuals filed by the respective insurers. If the Bureau finds that which appears to be error or deviation, it reports such to the insurer and to the Commissioner. It cannot compel the insurer to correct the claimed error. That power rests with the Commissioner. And, its finding of a claimed error is by no means conclusive upon the insurer or the Commissioner, for the insurer may challenge the finding by appealing to the Commissioner. Thus, the Bureau exercises no legislative, executive, or administrative power over those insurers submitting reports to it in conformity with the Commissioner's order. Its function is examination—not correction.

In the third place, the legislature specifically provided, by RCW 48.19.410(8), that the Commissioner could not license an additional bureau for examination of documents relative to a kind of insurance being examined by an existing licensed bureau. This the legislature could do, under the circumstances, in the interest of the general wel-

fare, without running afoul of Const. art. 12, § 22,[8] prohibiting monopolies. *Wood v. Seattle*, 23 Wash. 1, 62 Pac. 135 (1900), *Chas. Uhden, Inc. v. Greenough*, 181 Wash. 412, 43 P.2d 983, 98 A.L.R. 1181 (1935). As pointed out in both of the cited cases, the thrust of the antimonopoly provision of the constitution is toward combinations between corporations, companies, or individuals, made for the purpose of fixing the price or limiting the production of any commodity or product, and it does not ordinarily apply to the state in the exercise of its police power for the enhancement of the general welfare. The Bureau fixes no rates; neither does it limit the issuance of policies of insurance. It only reviews documents to see that lawful premiums are charged.

Finally, application of the Commissioner's order to property insurers alone simply does not amount to unconstitutional, unreasonable, or arbitrary discrimination. RCW 48.19.410 comprehends that the Commissioner may direct examination of policy documents of one kind of insurance as opposed to another, and the evidence adduced at the hearing before the Commissioner, although not in total accord, supports the Commissioner's decision. *Cf. Clark v. Dwyer*, 56 Wn.2d 425, 353 P.2d 941 (1960).

We conclude that the judgment of the trial court must be affirmed.

FINLEY, C. J., DONWORTH, WEAVER, and OTT, JJ., concur.

HALE, J. (dissenting)—I dissent. That the Washington Insurance Examining Bureau may be a useful, efficient and

---

[8]"Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership, or association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, through their stockholders, or the trustees or assignees of such stockholders, or with any copartnership or association of persons, or in any manner whatever for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity. The legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated companies, if necessary for that purpose, may declare a forfeiture of their franchises." Const. art. 12, § 22.

prudent organization, performing a needful service to the fire insurance industry and deserving of the Commissioner's confidence, does not, in my opinion, warrant its exercising the sovereign powers of government nor excuse the government in giving it an unique status. The Insurance Commissioner's order, effective March 20, 1964, directing all fire insurance companies to submit their premium data to a private corporation appears to be an unconstitutional use of executive power, both creating a monopoly and delegating the police power to a private entity. Aside from its possible unconstitutionality, the order may also violate the state civil service law, for it places the state's work in private hands. Since statehood, Washington has maintained a constitutional policy against monopoly, and it seems to me that the order under review not only violates this policy by permitting a monopoly, but goes farther and actively fosters one.

Article 12, § 22 of the Washington State Constitution, declares that "Monopolies and trusts shall never be allowed in this state . . . ." The examining bureau comes into existence under RCW 48.19.410, which also permits it to examine the policies of all fire insurance companies to ascertain if they are charging, in each instance, the lawful or posted premium. One should note the permissive nature of the language employed. RCW 48.19.410(1) states:

> The Commissioner may permit the organization and operation of examining bureaus for the examination of policies, daily reports, binders, renewal certificates, endorsements, and other evidences of insurance or of the cancellation thereof, for the purpose of ascertaining that lawful rates are being charged.

The Insurance Commissioner's order, No. 179, issued pursuant to that statute, not only permits a monopoly, I think, but explicitly creates one in the following language:

> For the purpose of ascertaining that lawful rates are being charged and that insurers are adhering to filings made by them or on their behalf, every insurer authorized to write property insurance in the State of Washington shall submit to the Washington Insurance Examining

Bureau, Inc., for examination, all policies, daily reports, binders, renewal certificates, endorsements and other evidences of insurance or the cancellation thereof . . . .

Turning over to the Washington Insurance Examining Bureau, Inc., a private corporation, sole power, except for the Commissioner, to make initial examinations on fire insurance policies, operates to give the rating bureau an exclusive franchise to engage in the examining business. If this is not monopoly, then the term has little meaning to me.[9]

Passing now from monopoly to delegation of power, we come to a subtle yet more arresting aspect of the majority decision—that of transferring a segment of the police power to a private corporation or entity. Any business which for sound reasons ought to be subject to regulation for the public good is a business affected with the public interest and may, under the police power, be reasonably regulated in the public interest. *Nebbia v. New York*, 291 U.S. 502, 78 L. Ed. 940, 54 Sup. Ct. 505, 89 A.L.R. 1469 (1934); 11 Am. Jur. *Constitutional Law* § 296; *Continental Ins. Co. v. Fishback*, 154 Wash. 269, 282 Pac. 44 (1929). The whole idea behind the regulation of the insurance business and the adoption of comprehensive insurance codes throughout the fifty states of the Union is that insurance is a business affected with the public interest and, thus, falls within the reasonable exercise of the state's police powers to protect the public's welfare. Indeed, so universally is this view accepted nowadays that the idea of state regulation of insurance is rarely challenged, and then usually in such instances only where the particular business activity sought to be regulated is not of itself affected with the public interest. See *Northwestern Nat. Ins. Co. v. Fishback*, 130 Wash. 490, 228 Pac. 516, 36 A.L.R. 1507 (1924), where a statute prohibiting more than one agent per company in

---

[9]It should be noted that this state's antimonopoly provision in the constitution (Article 12 § 22), was adopted after the Supreme Court of the United States had upheld a Louisiana statute establishing a private monopoly in the butchering and meat industry in *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 21 L. Ed. 394 (1873). Our constitution adopted in 1889 should be regarded as a remedy for this situation.

towns of less than 50,000 population and more than two in cities over 50,000 was held unconstitutional as not regulat-ing an activity affecting the public interest.

Laws designed to protect the public from insurance fraud, misrepresentation and overreaching, unreasonable or illegal charges, cutthroat competition and insolvent insur-ance companies clearly uphold the public welfare. Accord-ingly, a study of the delegation of the police power begins with the undeniable premise that regulating insurance as a business affected with the public interest is constitutionally permissible as an exercise of the police power in protecting the public welfare, peace, safety and health.

Although a distinction may exist in some instances be-tween the delegation of legislative power per se and a delegation of police power as exercised by the executive hand of government, that distinction seems lacking here. In an analogous situation, a state statute setting up a compul-sory code regulating the coal industry, when adopted by a majority of its members, was held to be an unlawful dele-gation of legislative authority to private individuals be-cause it allowed the majority to force the code upon an unwilling minority. *Carter v. Carter Coal Co.*, 298 U.S. 238, 80 L. Ed. 1160, 56 Sup. Ct. 855 (1936). Similarly, see *Ash-more v. Greater Greenville Sewer Dist.*, 211 S.C. 77, 44 S.E.2d 88, 173 A.L.R. 397 (1947).

We are dealing here with no merely ministerial duties. The police power is an attribute of sovereignty possessed by every state of the Union. 16 Am. Jur. 2d *Constitutional Law* § 259. Of course, it must be reasonably exercised to attain reasonable ends and cannot be arbitrarily imposed. See *County of Spokane v. Valu-Mart, Inc.* 69 Wn.2d 712, 419 P.2d 993 (1966). Therefore, if the regulating and polic-ing of the insurance industry is an attribute or element of that sovereignty, the Insurance Commissioner cannot dele-gate to a private corporation the duties imposed by law upon him with which he carries out that sovereign power. The compulsory referral of all fire insurance policies to a private corporation for its examination to determine if the

insurance company has complied with the insurance code, in my view, delegates to the private corporation one of the insurance commissioner's major duties, that of policing the industry to assure that only lawful premiums are charged. Just as the legislature may not delegate to private persons the power to define crimes (16 Am. Jur. 2d *Constitutional Law* § 249), neither it nor the executive branch of government should be accorded power to delegate the duties of enforcement either.

If, as it is stated as a general rule in 16 C.J.S. *Constitutional Law* § 179, neither the legislature nor any inferior legislative body to which a part of the police power has been granted can lawfully alienate, surrender or delegate to another by any grant, contract or delegation any part of such power, then the executive branch of government, charged as it is by law with carrying out and enforcing the police power, should be equally limited. The executive branch, as with the legislative branch, ought not have power to clothe private persons with the power of government in a self-governing democracy.

Implicit in the majority opinion is the view that whatever illegality exists in such delegation of power is cured by the right of appeal to the Commissioner and his ultimate power of supervision over the Bureau's operations. But these same rights of appeal and duty to supervise can be said to inhere in any illegal delegation of power, either expressly in the grant of such power or impliedly as a condition thereof and, therefore, do not save the measure from any illegality found in it. The illegality consists not in the danger or even likelihood that the insurance commissioner will either fail to supervise carefully or give conscientious review to any appeals, but rather in a violation of the constitution that designedly protects us from those unspecified and unidentifiable hazards to self government lurking in a delivery of the powers of government into the hands of private persons or corporations.

The record contains no hint that the Insurance Commissioner has conducted his office inefficiently, inadvisedly, or

improperly. But the test is not whether a good public administrator *may* act wisely under a power, but rather how unwisely a bad administrator *can* act under it. Consider the danger to our institution if the Chief of the Washington State Patrol or the chief of police of a large city were empowered to delegate his powers and duties to a private corporation; or, if the power and duty to make the first investigations of air and water pollution were placed in the exclusive hands of a cooperative enterprise owned entirely by the regulated industries; or if banking institutions were at the outset turned over to the representatives of regulated institutions for examination; or if packers, canners and pharmaceutical houses were exclusively empowered to make the initial tests to decide whether the food, drugs and pharmaceuticals going into the channels of commerce meet the standards fixed by law for the public's protection.

One can readily see in these few examples the real dangers inhering in the apparently innocent delegation of power presented by the instant case—dangers not obviated by supervision or rights of appeal—for the major steps in law enforcement of any kind occur largely when the state's representatives make their initial contact with the violations.

I am mindful that this court in *Storey v. Seattle,* 124 Wash. 598, 215 Pac. 514 (1923), upheld a city ordinance appointing the King County Humane Society as official city poundmaster and authorizing it, *inter alia,* to impound all unlicensed animals running at large, and giving the society authority to enforce the animal control laws and collect license fees, and receive 85 per cent thereof for its services. But that case, I think, is quite distinguishable, if not sui generis.

Because the humane society was, in that case, charged with the duty of removing dead and diseased animals from the streets, we regarded the delegation of duties in much

the same light as we would an exclusive contract for garbage collection and, accordingly, upheld the arrangement.

But even if enforcement of animal control laws and enforcement of the insurance code are deemed analogous, that case, I hope, would be held to rest on its own rationale. After all, where else in our urban society do we find such completely irreconcilable and irately defended positions as those inevitably asserted by householders who own dogs and cats as opposed to their neighbors who do not. Mere considerations of constitutional law, I hope, would never override the happy policy of transferring from the police department responsibility for dogs, cats and other pets to persons possessing both the diplomacy and hardihood to accept the job.

Turning now to a final and subsidiary point which perhaps begs the question under discussion, but, nevertheless, invites comment: The Commissioner's order, it seems to me, tends to place outside the state's civil service system a substantial number of persons engaged in the state's work. Since 1961, the state has had a state civil service law. RCW 41.06; Laws of 1961, ch. 1, § 1, p. 7. It covers all state employees, putting their appointments, promotions, tenure, transfers and classifications under a merit system (RCW 41.06.010), and exempting from its coverage only those employees specifically designated in the act. RCW 41.06.070.

If regularly employed full-time employees are necessary in enforcing the insurance code, generally, and the work of the Bureau is essential in maintaining the legal premium schedules through daily examination of all fire policies in particular, then the operation of an examining bureau seems to me to be a regular service of state government in regulating the fire insurance business and employees of the Bureau should be deemed performing the work of state employees.

I think, therefore, that the employees of the Washington Insurance Examining Bureau are actually engaged in per-

forming services for the state in behalf of the Insurance Commissioner and should be included among the personnel of his department.

Therefore, I would reverse.

HUNTER, J., concurs with HALE, J.

HILL and ROSELLINI, JJ., concur in the result of the dissent.

July 3, 1967. Petition for rehearing denied.